### CLARKE *vs.* BAIRD.

An action can not be maintained by a purchaser, against the vendor, to recover damages for fraud upon a sale of land, in making a false representation as to one of the boundaries, if, at the time of the purchase, the plaintiff had the means of ascertaining the true line, and neglected to inform himself

Clarke *v.* Baird.

If a purchaser possesses the means of informing himself as to the character and situation of the land, and omits to use them, the rule of *caveat emptor* should be held to apply to him.

In an action by a purchaser, against the vendor, for fraud, in misrepresenting the boundaries of the land, a notice previously served by the purchaser upon a claimant of a portion of the land, under the statute concerning proceedings to compel the determination of claims to land, (2 *R. S.* 312,) will be evidence against the plaintiff, to show what land he then claimed a right to hold, under his conveyance.

In such a suit, the judgment record in an action of ejectment brought against the purchaser, by a third person, will not be evidence, upon the question of title between the vendor and purchaser.

THIS was an action to recover damages for fraud upon the sale of a tavern stand and premises, on the 4th of March, 1840, situated in the town of Oxford, in the county of Chenango. The cause of action principally relied on was for stating that the premises were bounded on the southerly or south-westerly side by a certain mill race; whereas, it was charged and alledged, the same did not extend to the mill race, and that the defendant well knew the same. The plaintiff, after he purchased the premises of the defendant, and went into possession, found that the Messrs. Lewis, who owned the adjoining lands, alledged that the plaintiff's land did not extend to the mill race, but they claimed that their land extended over and across the mill race, and embraced a strip upon that side of the mill race, bounding the premises of the plaintiff; thereby cutting off the plaintiff from the water of the mill race. The plaintiff thereupon served a notice upon the Lewises, under the statute, requiring them to appear in the supreme court and assert their claim to the premises in the manner provided by law. (2 *R. S.* 313, §§ 1, 2, 3, 4, &c.) The Lewises then brought an action of ejectment, against the plaintiff in this suit, and recovered the said strip of land. The notice which the plaintiff served upon the Lewises contained a description of the premises which the plaintiff claimed under his deed from Baird, and that said premises then were, and for three years had been, in the actual possession of the plaintiff, or of those from whom he derived title. The notice fully conformed to the second section of the statute. Upon the trial of this cause the plaintiff introduced in evidence

the record of the judgment in the ejectment suit brought by the Lewises against him, for the purpose of showing that the premises were not in fact bounded by the race. The defendant objected to this evidence, and excepted to the ruling of the court. The notice which the plaintiff served upon the Lewises was given in evidence upon the trial of the cause. It is not necessary to make a further statement of the facts, as the points will sufficiently appear in the opinion of the court. The case was tried before Justice Morehouse, at the Chenango circuit, in August, 1848.

*McKoon & Packer*, for the plaintiff.

*H. R. Mygatt*, for the defendant.

*By the Court*, MASON, J. There was much evidence given upon the trial of this cause, and the defendant's counsel, after the evidence was closed, requested the court to charge the jury " *that if the plaintiff had the means of ascertaining the true line, and neglected so to inform himself, the action can not be sustained.*" The court refused so to charge, and charged the jury that the contrary thereof was true, and the defendant's counsel excepted. I think the judge fell into an error here. I know that the writers on the moral law hold it to be the duty of the vendor to disclose all defects which are within his knowledge. (*Paley's Moral Philosophy, b.* 3, *ch.* 7. *Grotius, b.* 2, *ch.* 12, § 9. 2 *Kent*, 484.) The common law, however, is not quite so strict. (*Id.*) Chancellor Kent says, " the common law affords to every one reasonable protection against fraud in dealing, but it does not go the romantic length of giving indemnity against the consequences of indolence and folly, or careless indifference to the ordinary and accessible means of information." He adds, " If the purchaser be wanting of attention to these points where attention would have been sufficient to protect him from surprise or imposition, the maxim *caveat emptor* ought to apply." This rule seems to have been applied with even greater strictness on the sale of real estate than personal prop-

erty. I understand the court to go no farther in the case of *Sandford* v. *Handy,* (23 *Wend.* 260,) than to hold that a vendor of land is liable for a false representation as to its location, if the purchaser have not an opportunity, at the time, of seeing the premises; and such is the case as reported. And the same is true of the case of *Van Epps* v. *Harrison,* (5 *Hill,* 63.) In the latter case the purchaser had not the opportunity to see the lands. The court in that case seemed to doubt the propriety of extending these actions for fraud on the sale of real estate. Bronson, Justice, in giving the opinion of the court, says: " I am not entirely without apprehension that some bad consequences may result from giving an action against the vendor for misrepresentation concerning the quality and condition of the land he sells." He adds, "common prudence requires the vendee should ascertain the truth of such assertions, before he acts."

In the still later case of *Davis* v. *Sims and Bates,* (*in MS.*) in which case Chief Justice Nelson delivered the opinion of the court, in an action on the case for fraud in the sale of a farm, and where the purchase was made in the winter season, and the purchaser had been upon the farm while it was covered with snow, the chief justice, in the conclusion of his opinion, says, "independently of this ground, we apprehend it would be very difficult for the plaintiff to make out a cause of action, in a case where, if he had not the same opportunity as the defendants to obtain a knowledge of the character and condition of the farm, he had at least in his power all the means necessary to acquire such knowledge; and if he failed, the failure is as much attributable to his own neglect and want of ordinary prudence, as to their representations." He adds, " in such a case the rule *caveat emptor* emphatically applies." The case of *Davis* v. *Sims and Bates* was considered by this court in the recent case of *Harrington* v. *Norton,* in which I delivered the opinion, and the principles of the case adopted. In speaking of the case of *Davis* v. *Sims and Bates,* on that occasion, I used the following language, which I have found no occasion since to retract: " This I doubt not is the salutary rule when applied to the case

Clarke *v.* Baird.

of a sale of real estate; and where the purchaser has the op-
portunity to examine the premises, the rule of *caveat emptor*
should be enforced with great strictness." We held the defend-
ant liable in the case of *Harrington* v. *Norton,* which was an
action for fraud in the sale of land, upon the sole ground that
the plaintiff did not possess the necessary means, with even due
diligence, to inform himself in relation to the matters for which
the action was brought. And we laid down the rule distinctly,
in this latter case, that if the plaintiff possessed the means at
hand of informing himself, and did not use them, the rule of
*caveat emptor* should be held to apply to him. Applying the
principles of these cases to the charge of the judge in this case,
I do not see how it is possible to sustain it. He did not charge
as requested, but charged that the converse of the proposition
was true. The charge then will read as follows, to wit : " that
if the plaintiff had the means of ascertaining the true line, and
neglected to inform himself, the action can still be sustained."
I am not prepared to assent to this, as a general proposition of
instruction to a jury.

I do not mean to say that there may not be cases where, al-
though the plaintiff might possess the means to inform himself,
still he might recover, notwithstanding. But such a case can
not occur where he has been negligent in ascertaining the truth,
or where by common and ordinary diligence he must have pos-
sessed himself of the truth. I understand this proposition to
present a case where the plaintiff had the means of ascertain-
ing the truth, and was guilty of neglect in not informing him-
self. The language of the proposition is that he had the means,
*and neglected to inform himself.* I understand this request to
be nothing more nor less than asking for the general proposi-
tion of law in such cases. That the rule of *caveat emptor* shall
be strictly applied to the plaintiff, and if he have the means at
command and is negligent in the use of them, that he shall be
deprived of his action, at any rate. I am satisfied the proposi-
tion of the judge, in the broad terms in which he stated it to
the jury, was well calculated to mislead, and can not be sus-
tained, either upon authority or principle. The counsel for the

defendant requested the court to charge the jury that the plaintiff was bound by the line as stated by him in his notice to the Lewises, requesting a trial of the title, which line is there stated " as fenced when plaintiff came into possession." The learned justice stated to the jury that he declined to adopt this proposi tion, and then charged that " *the notice was evidence of the extent that Baird gave him possession.*" If the counsel in this request desired the justice to charge that the plaintiff was estopped by this notice from setting up any other line than the one claimed in it, then the court was right in refusing to charge in the language of the proposition. If, however, the meaning and fair construction of the proposition imports nothing more than that the notice is binding upon the plaintiff as a broad admission of his, by way of evidence, then the court should have charged that such proposition was the law of the case.

There can be no doubt, I think, but that this written notice is to be taken as something more than an admission of what land the defendant put the plaintiff in possession of. I regard it as an admission of the plaintiff of what land he claimed he was entitled to hold under his deed from the defendant. Or in other words, I think it to be a strong admission in writing by the plaintiff that he did not consider that he was entitled to hold under his deed any further than where the old fence was when he went into possession. The judge held it to be evidence of the extent that Baird gave him possession. I think he did not go far enough here. It seems to me that the notice must be considered evidence to the extent we have stated above. I am of opinion, therefore, whatever may be said of the proposition, that the judge did not give full force and effect to this evidence in his charge.

But again; the justice, upon the trial, most certainly erred in admitting the judgment record in the ejectment suit of the Lewises against Clarke, to show the boundary of the tavern stand lot. That record was no evidence upon the question of title, between the parties to this suit. The action of ejectment was formerly a mere possessory action and concluded no one, either as to title or possession. Even the party against whom

the judgment was recovered might bring a new action, and again contest for the possession. By the revised statutes, however, a judgment in an action of ejectment, upon a verdict, concludes the parties to the action, and all persons claiming under them by a title accruing after the commencement of the action. (2 *R. S.* 309, § 36. *Ainslie* v. *The Mayor, &c. of New-York,* 1 *Barb. S. C. R.* 169.) This record is no evidence, therefore, upon this question of title between the parties to this suit, and should not have been received. (1 *Barb. S. C. Rep.* 169.) There are other questions in this case; but it is not necessary to consider them. There must be a new trial, costs to abide the event.

New trial granted.

ST. LAWRENCE GENERAL TERM, September, 1849. *Paige, Willard, and Hand,* Justices.